1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CARLOS CHAVEZ, JR.,                              No.  2:22-CV-0490-DMC

12                     Plaintiff,

13          v.                                        MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                      Defendant.
16

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 7 and 9, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22   U.S.C. § 636(c); see also ECF No. 10 (minute order reassigning case to Magistrate Judge).

23   Pending before the Court are the parties' briefs on the merits, ECF Nos. 14 and 18.

24          The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  <u>See Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  <u>See Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  <u>See Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

|  |  |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

/ / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

1

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 6, 2019.  See CAR 18.[1]  In

the application, Plaintiff claims disability began on July 1, 2018.  See id.  Plaintiff's claim was

initially denied.  Following denial of reconsideration, Plaintiff requested an administrative

hearing, which was held on August 20, 2021, before Administrative Law Judge (ALJ) Trina

Mengesha-Brown.  In a September 1, 2021, decision, the ALJ concluded Plaintiff is not disabled

based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): post-traumatic stress disorder (PTSD), adjustment disorder with anxious and depressed mood, and degenerative disc disease of the cervical spine (20 CFR 404.1520(c) and 416.920(c)).
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following additional limitations: frequent reaching, handling, and fingering bilaterally; the avoidance of unprotected heights, workplace hazards, and moving machinery; simple, routine tasks not at a production pace; occasional interactions with supervisors and co-workers; no interactions with the general public; and occasional changes to a routine work setting;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, vocational expert testimony, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 18-31.

After the Appeals Council declined review on January 10, 2022, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]     Citations are to the Certified Administrative Record (CAR) lodged on June 14, 2022, ECF No. 11.

4

## III.  DISCUSSION

In his opening brief, Plaintiff argues: (1) the ALJ erred by failing to consider all the evidence; (2) the ALJ erred by making illogical or contradictory findings at Step 2 regarding the severity of Plaintiff's impairments; (3) the ALJ erred at Step 3 in concluding Plaintiff's mental impairments did not meet or equal an impairment set forth in the Listing of Impairments; (4) the ALJ's determination at Step 4 that Plaintiff can perform medium work is not based on substantial evidence; (5) the ALJ's decision is erroneous based on the evidence at Step 5; and (6) the matter should be remanded for consideration of evidence not included in the record.

### A.    Consideration of the Entire Record

Plaintiff argues that the ALJ "failed to do a complete review of Chavez's record." ECF No. 14, pgs. 7-9.  According to Plaintiff, the ALJ erred by not discussing various portions of the record at CAR 396-428, 440-71, 481-82, 484-561, 563-65, 567-623, and 725.  See id. Defendant counters that the evidence cited by Plaintiff "is not probative either because it falls outside the relevant period or because it does not support the alleged severity of his functional limitations."  ECF No. 18, pg. 26.

The ALJ is not required to discuss every piece of evidence that is neither significant nor probative.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012).  Here, the Court agrees with the ALJ and Defendant that the evidence cited by Plaintiff is neither probative nor significant.

Plaintiff first references pages 396 through 428 of the record.  These records through page 425 are marked as Exhibit 2F and consist of mental health progress notes from MH Medication Management.  See CAR 396-428.  The records cover a period from April 2017 through July 2018.  See id.  The records through July 2018 are not probative as they relate to Plaintiff's condition and treatment outside the relevant period at issue in this case.

The only portion of this exhibit that is arguably within the relevant period here (i.e., after the July 1, 2018, alleged onset date) are documents at pages 421-25 documenting a follow-up appointment on July 6, 2018 – five days after the alleged onset date.  At this visit, Plaintiff reported that he was not doing well and felt overwhelmed at work.  See CAR 421.

Plaintiff stated that he felt extremely anxious at work and felt as if he could not do his job.  See id.  On mental status examination, Plaintiff was observed as markedly anxious with mild psychomotor restlessness.  See id. at 422.  No suicidal ideation or psychotic thought content were noted.  See id.  Memory, concentration, and cognition were intact, and judgment, insight, and impulse control were good.  The doctor recommended extending medical leave from work for an additional four weeks and continuation of current medication.  See id. at 423.  Given the largely normal objective findings, the Court agrees with the ALJ that the records from this visit are also not probative or significant in establishing disability after July 1, 2018.

Next, Plaintiff references documents at pages 440 through 471 of the record. These documents are part of Exhibit 4F and consist of a May 12, 2020, "Summary of Episode Note" from the Department of Veterans Affairs (VA).  See CAR 440-71.  The exhibit contains a list of Plaintiff's encounters at the VA for medical treatment between May 7, 2018, and May 8, 2020.  See id.  Given that these records contain only a recitation of Plaintiff's subjective complaints and do not reference objective findings, the Court agrees with the ALJ that they are not probative even though they cover a period of time after the alleged onset date of July 1, 2018.

Next, Plaintiff cites documents at pages 481 through 482 of the record.  These pages are a portion of Exhibit 6F, which is a report following a comprehensive internal medicine examination performed on Plaintiff on August 22, 2020, by Dr. Robert Tang.  See CAR 477-83. Pages 481 through 482 of this exhibit reflect the doctor's diagnoses and functional assessment. See id. at 481-82.  Dr. Tang's opined that Plaintiff has "some decrease in physical function pending mental health determination."  Id. at 481.  Dr. Tang found that Plaintiff can stand and walk up to six hours in an eight-hour workday, had no limitation on sitting, did not require use of an assistive device, could engage in all postural activities frequently, and had some manipulative restrictions on the right side limited to "[f]requently handling and fingering and no limitation on reaching overhead/forward and feeling."  Id. at 482.  Dr. Tang also assessed Plaintiff as limited with respect to working around heights and heavy machinery.  See id.  Given that the doctor's opinion is consistent with the ALJ's statement of Plaintiff's residual functional capacity, they are not probative of Plaintiff's claim of disability resulting from physical limitations.

Plaintiff references pages 484 through 561 of the record.  These documents are designated as Exhibit 7F and consist of notes from Enloe Medical Center covering the period from February 2011 through December 2015.  See CAR 484-561.  The Court agrees with the ALJ that these documents are not probative because they relate to Plaintiff's condition prior to the date he said he became disabled – July 1, 2018.

Next, Plaintiff cites to pages 563 through 565 of the record.  These documents are marked as Exhibit 8F and consist of letters dated June 27, 2018, July 25, 2018, and August 8, 2018, from Kumar Vedantham, M.D., at VA Oakland Behavioral Health Clinic.  See CAR 563-65.  In each letter, Dr. Vedantham states that Plaintiff has a "serious and permanent" medical condition that is exacerbated by stress.  See id.  None of the letters describes this condition or provides any functional assessment.  As such, the Court agrees with the ALJ that these records are not probative.

Plaintiff next references pages 567 through 623 of the record.  These documents are marked as Exhibit 9F.  See CAR 567-623.  The records are from Butte County Department of Behavioral Health and cover the period from June 2013 through December 2017.  See id.  As with the documents at Exhibit 7F, this exhibit is not probative because it relates to treatment prior to the alleged onset date.

Finally, Plaintiff cites page 725 of the record.  This document is part of Exhibit 11F, which are treatment notes from a visit on September 21, 2018.  See CAR 723-27.  On examination, Plaintiff was markedly anxious and distressed.  See id. at 725.  Plaintiff demonstrated mild psychomotor restlessness.  See id.  Plaintiff's mood was anxious, thought process was highly preoccupied, and thought content was "overwhelmed by life stressors."  Id.  No psychotic content was noted, and Plaintiff did not express suicidal ideation.  See id.  Memory, concentration, and cognition were intact.  See id.  Judgment, insight, and impulse control were noted to be "good."  Id.  The notes do not outline any functional assessment and, as such, are not probative on the issue of disability.

/ / /

/ / /

7

1

**B.      Severity Determination**

2                    According to Plaintiff, the ALJ's analysis at Step 2 of the severity of Plaintiff's

3      impairments is "based on illogical or contradictory findings."  ECF No. 14, pgs. 9-11.

4                    To qualify for benefits, the plaintiff must have an impairment severe enough to

5      significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§

6      404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently

7      severe to limit the ability to work, the Commissioner must consider the combined effect of all

8      impairments on the ability to function, without regard to whether each impairment alone would be

9      sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42

10     U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of

11     impairments, can only be found to be non-severe if the evidence establishes a slight abnormality

12     that has no more than a minimal effect on an individual's ability to work.  See Social Security

13     Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

14     SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by

15     providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20

16     C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.

17     See id.

18                    At Step 2, the ALJ concluded Plaintiff has the following severe impairments:

19     PTSD; adjustment disorder with anxious and depressed mood; and degenerative disc disease of

20     the cervical spine.  See CAR 21.  ALJ made the following findings:

21
22
              The above medically determinable impairments significantly limit the
              ability to perform basic work activities as required by SSR 85-28.

23
24
25
              The undersigned found that all impairments other than those enumerated
              above, alleged and found in the record, are non-severe or not medically
              determinable as they have been responsive to treatment, cause no more
              than minimal vocationally relevant limitations, have not lasted or are
              not expected to last at a "severe" level for a continuous period of twelve
              (12) months, are not expected to result in death, or have not been properly

26
27
28
              [2]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
       pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
       carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
       appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
       in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

diagnosed by an acceptable medical source (20 CFR 404.1509, 404.1513(a), 416.909, and 416.913(a)).

The medical evidence of record also reveals diagnoses of alcohol abuse, alcoholic hepatitis, tobacco use disorder, cannabis abuse, and status-post left rotator cuff repair. However, the undersigned finds these impairments non-severe because the medical evidence of record reveals either few or no related symptoms, few to mild exam findings, or no to minimal lab results, radiographs, or other objective studies. Consequently, the undersigned does not find that these impairments impose more than minimal limitations on the claimant's ability to perform basic work-related activities.

The claimant has been in sustained remission from alcohol abuse during the period at issue. (3F; 11F).

There is record of treatment for alcoholic hepatitis in 2014, but none during the period at issue. (1F/83). The record contains diagnoses of tobacco use disorder and cannabis abuse; however, there is no indication they limit the claimant's mental or physical abilities. (1F/83). Likewise, the claimant reported in 2018 that he stopped using marijuana. (3F/1).

The claimant has a remote history of a left rotator cuff repair. (1F/83; 7F/75). However, the claimant received no treatment for the condition during the period at issue, and physical examination revealed full shoulder range of motion and strength. (6F).

The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

CAR 21.

According to Plaintiff: "Here the ALJ erred by denying Chavez's claim when she did not assess the rules of SSA 20 CFR 404.1520(b) and 416.920 and process the sequential process in determining if Chavez meets the 'severity' prong of the analysis." ECF No. 14, pg. 9. Plaintiff has not, however, specifically explained how the ALJ allegedly erred at Step 2. In any event, as outlined above, the ALJ determined that Plaintiff's mental impairments and degenerative disc disease are in fact severe impairments. The Court finds no error at Step 2.

**C.    Applicability of Listing of Impairments**

As part of Plaintiff's argument related to the ALJ's severity finding at Step 2, Plaintiff also appears to challenge the ALJ's finding at Step 3 that her mental impairments do not meet or equal any impairment set forth in the Listing of Impairments, specifically Listings 12.04, 12.06, and 12.15. See ECF No. 14, pgs. 10-11.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  <u>Young v. Sullivan,</u> 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  <u>Key v. Heckler,</u> 754 F.2d 1545, 1550 (9th Cir. 1985).

According to Plaintiff:

> Additionally, the ALJ failed to consider the long standing, on and off again mental health treatment Chavez has received since 2012 (*Supra*) as an indicator he did not meet "*criteria C"* in proving he is disabled, under 12.04,12,06 and 12.15. Instead, she claims because there is no evidence of treatment after 2018 (*however there is)* that this somehow was a reason to not support he met the criteria under "C" which is directly against the rules as outlined in 12.00(D).
> Had the ALJ properly assessed the psychosocial supports correctly, there would have been no need to further assess the claim and direct the ALJ to a fully favorable decision.
> Therefore, this illogical/contradictory decision by the ALJ should be reversed (*Burnett)*.
> The records support Chavez has been receiving mental health treatment since before 2012 (AR530-34) At the time his treating physician Dr. Ross Tye, M.D. placed Chavez on medical leave and made changes to his medications(AR514). Thereafter, in 2013, Chavez was found with a gun in his hand and transferred to Butte County (BCBH) held on a 5150 hold (AR568-74). Then again in September 2015, he was transferred to BCBH under an involuntary admission for a psychiatric evaluation (AR484-92) and once again on December 15, 2015, was placed on a 5150 hold (AR484-5). The treatment records indicate that he was brought in by police for suicidal ideations and that he had not been caring for himself and On December 18, 2015, Chavez was sent to Mather Mental Health ICU for 10 days for extensive inpatient treatment (AR 302-47). In June 2018 Chavez had an outburst at work on a walking talkie and got into a physical altercation with a co-worker (AR49). He has not returned to work since.
> Chavez has had extensive ongoing mental health service since 2011, in a highly structured setting and only marginal adjustment. (12.00), for example, despite his extensive therapy, he continues to suffer from severe isolation (AR51,725) and multiple debilitating anxiety attacks each week (AR50-52) along with suicidal ideations are still occurring (AR51) despite treatment. It is also reported he goes a week without showering (AR52) and up to three days without eating (AR52). Chavez testified COVID-19 has impacted services (AR48) but prior to COVID-19 the record shows through mid-2020 there were consistent and sustained mental health treatment received on an ongoing basis.

1
2
3
4

> Because the ALJ was illogical in basing her decision on contradictory findings that were not justified to deny Chavez, and which did not meet criteria as required within 20 CFR 404.1520(c) and 416.920(c) ) her illogical reason to deviate from the rules under listing 12.00 is without merit or justification and illogic and contradictory. *Burnett*, and *Podedworny v. Harris.*

5

ECF No. 14, pgs. 10-11 (errors in original).

6

Here, the ALJ considered the applicability of three specific listings related to

7

mental disorders – Listing 12.04 (depressive, bipolar, and related disorders), Listing 12.06

8

(anxiety and obsessive-compulsive disorders), and Listing 12.15 (trauma- and stressor-related

9

disorders).  For these listings to be met or equaled, the disorder must satisfy the "Paragraph A"

10

criteria <u>and</u> either the "Paragraph B" or "Paragraph C" criteria.  <u>See</u> Listing of Impairments

11

12.00(A)(2).

12

Listing 12.04 disorders are characterized by an irritable, depressed, elevated, or

13

expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a

14

clinically significant decline in functioning.  <u>See</u> Listing of Impairments 12.00(B)(3)(a).

15

Paragraph A of Listing 12.04 requires medical documentation from two sub-categories.  The first

16

Paragraph A sub-category requires evidence of a depressive disorder characterized by five or

17

more of the following: (a) depressed mood; (b) diminished interest in almost all activities; (c)

18

appetite disturbance with change in weight; (d) sleep disturbance; (e) observable psychomotor

19

agitation or retardation; (f) decreased energy; (g) feelings of guilt or worthlessness; (h) difficulty

20

concentrating or thinking; and (i) thoughts of death or suicide.  <u>See</u> Listing of Impairments

21

12.04(A)(1).  The second Paragraph A sub-category requires evidence of bipolar disorder

22

characterized by three or more of the following: (a) pressured speech; (b) flight of ideas; (c)

23

inflated self-esteem (d) decreased need for sleep; (e) distractibility; (f) involvement in activities

24

that have a high probability of painful consequences that are not recognized; and (g) increase in

25

goal-directed activity or psychomotor agitation.  <u>See</u> Listing of Impairments 12.004(A)(2).

26

Paragraph B of Listing 12.04 is satisfied by evidence of an extreme limitation in one, or marked

27

limitation in two, of the following areas of mental functioning: (1) ability to understand,

28

remember, or apply information; (2) ability to interact with others; (3) ability to concentrate,

persist, or maintain pace; and (4) ability to adapt or manage oneself.  See Listing of Impairments

12.04(B).  Paragraph C of Listing 12.04 requires that the claimant's mental disorder be "serious

and persistent" as shown by a medically documented history of the existence of the disorder over

a period of at least two years and evidence of both: (1) medical treatment, mental health therapy,

psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms

and signs of the mental disorder; and (2) marginal adjustment.  See Listing of Impairments

12.04(C).

Listing 12.06 disorders are characterized by excessive anxiety, worry,

apprehension, and hear, or by avoidance of feelings, thoughts, activities, objects, places, or

people.  See Listing of Impairments 12.00(B)(5)(a).  Paragraph A of this listing requires medical

documentation of the factors shown in three sub-categories.  The first Paragraph A sub-category

required evidence of three or more of the following: (a) restlessness; (b) easily fatigued; (c)

difficulty concentrating; (d) irritability; (e) muscle tension; and (f) sleep disturbance.  See Listing

of Impairments 12.06(A)(1).  The second Paragraph A sub-category required a showing of panic

disorder or agoraphobia characterized by one or both of the following: (a) panic attack followed

by a persistent concern or worry about additional panic attacks or their consequences; and (b)

disproportionate fear or anxiety about at least two different situations (such as using public

transportation, being in a crowd, being in line, etc.).  See Listing of Impairments 12.06(A)(2).

The third Paragraph A sub-category requires evidence of obsessive-compulsive disorder

characterized by one or both of the following: (a) involuntary, time-consuming preoccupation

with intrusive, unwanted thoughts; and (b) repetitive behaviors aimed at reducing anxiety.  See

Listing of Impairments 12.06(A)(3).  The Paragraph B and Paragraph C criteria are the same as

for Listing 12.04.  See Listing of Impairments 12.06(B), (C).

Listing 12.15 disorders are characterized by experiencing or witnessing a traumatic

or stressful event or learning of a traumatic event occurring to a close family member or close

friend, and the psychological aftermath of clinically significant effects on functioning.  See

Listing of Impairments 12.00(B)(11)(a).  Paragraph A of this listing requires medical

documentation of all of the following: (a) exposure to actual or threatened death, serious injury,

or violence; (2) subsequent involuntary re-experiencing of the traumatic event; (3) avoidance of external reminders of the event; (4) disturbance in mood and behavior; and (5) increases in arousal and reactivity.  See Listing of Impairments 12.15(A).  The Paragraph B and Paragraph C criteria are the same as for Listing 12.04.  See Listing of Impairments 12.15(B), (C).

All three listings at issue have the same Paragraph B and Paragraph B requirements and, to meet or equal any of these listings, Plaintiff must provide evidence satisfying either the Paragraph B or Paragraph C criteria.  The Court next considers the ALJ's analysis of the Paragraph B and Paragraph C criteria.

> 1.   Paragraph B Criteria

As to the Paragraph B criteria, the ALJ stated:

> . . .In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a mild limitation. At a psychological consultative examination, the claimant displayed poor memory; however, his intelligence and fund of knowledge were rated as adequate. (5F). The claimant's treating providers noted normal memory and cognition. (3F/1, 4; 11F/3). The claimant reads for pleasure and performs all his own meal preparation. (5F). As such, the undersigned finds the claimant has mild limitation understanding, remembering or applying information.
>
> In interacting with others, the claimant has a moderate limitation. At the hearing, the claimant testified to social isolation, inability to get along with others, and anger/irritability; however, the medical evidence of record does not support the extent of the allegations. (Hearing Testimony). At the psychological consultative examination, the claimant displayed adequate eye contact and he was pleasant and cooperative throughout the exam. (5F). The claimant's treating providers noted anxious/depressed mood and withdrawnness. (3F/1, 4; 11F/3). Despite allegations of isolation, the claimant talks with his sister regularly and keeps in touch with his 2 sons. (5F). Accordingly, the undersigned finds the claimant has moderate limitation interacting with others.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. At a psychological consultative examination, the claimant displayed adequate attention, concentration, and calculation. (5F). While the claimant's treating providers noted mild restlessness and preoccupation/rumination, the claimant displayed intact concentration.

(3F/1, 4; 11F/3). The claimant reports he collects cans, reads, plays disc golf (alone), and listens to meditation recordings. (5F) He does all of his own shopping, meal preparation, and chores. (5F). As a result, the undersigned finds the claimant has moderate limitation concentrating, persisting or maintaining pace.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant's mental health treatment has been conservative and limited. Following the claimant's 2018 alleged onset date, there is evidence of a handful of therapy appointments in 2018, but no record of mental health treatment thereafter. (3F/1, 4; 11F/3). Notably, records did mention some improvement of symptoms with increased medication in 2018. (3F/3). The claimant attended a psychological consultative examination in July 2020, where the claimant stated he had not been taking any medications in over a year. (6F). There have been several prior psychiatric inpatient admissions in the past, but none since the alleged disability onset date. (6F). The claimant lives on his own. (5F). He is fully able to care for his personal needs, and he can episodically complete activities of daily living. (6F). Mental status examination reveals adequate judgment and good impulse control. (5F; 3F/1, 4; 11F/3). Accordingly, the undersigned finds the claimant has moderate limitation adapting or managing himself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

CAR 22-23.

To satisfy Paragraph B of Listing 12.04, Plaintiff must provide evidence of either an extreme limitation in one or more of the listed categories or a marked limitation in two or more of the listed categories.  The categories of functioning considered under Paragraph B are: (1) ability to understand, remember, or apply information; (2) ability to interact with others; (3) ability to concentrate, persist, or maintain pace; and (4) ability adapt or manage oneself.  See e.g. Listing of Impairments 12.04(B).  Here, the ALJ concluded Plaintiff has mild limitation in the ability to understand, remember, or apply information, and moderate limitations in the remaining areas of functioning listed in Paragraph B.  The ALJ found no extreme or marked limitations.  Plaintiff does not challenge the ALJ's conclusions with respect to the Paragraph B criteria, instead focusing on the Paragraph C criteria, discussed below.

/ / /

/ / /

/ / /

14

2.      Paragraph C Criteria

As to the Paragraph C criteria, the ALJ stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. Specifically, as discussed in this decision, the claimant does not meet the requirements of the paragraph C criteria of Listings 12.04, 12.06, or 12.15 as the evidence fails to show that changes or increased demands have led to exacerbation of the claimant's symptoms and deterioration in functioning, such as an inability to function outside the home or a more restrictive setting, without substantial psychosocial supports as described in Listing 12.00D.
>
> Similarly, the evidence lacks documented episodes of deterioration that required hospitalization or absence from work, making it difficult to sustain work activity over time, due to mental impairments. Following the claimant's 2018 alleged onset date, there is evidence of a handful of therapy appointments in 2018, but no record of mental health treatment thereafter. (3F/1, 4; 11F/3). The claimant attended a psychological consultative examination in July 2020, where the claimant stated he had not been taking any medications in over a year. (6F). There have been several prior psychiatric inpatient admissions in the past, but none since the alleged disability onset date. (6F). The claimant lives on his own. (5F). He is fully able to care for his personal needs, and he can episodically complete activities of daily living. (6F).

CAR 23.

Because the ALJ found no extreme or marked limitations in the areas of functioning described in Paragraph B, and because Plaintiff does not challenge the ALJ's conclusions in this regard, Plaintiff cannot prevail if he cannot establish that the Paragraph C criteria have been met.  Here, the ALJ concluded that Plaintiff failed to meet the Paragraph C criteria, finding that the record does not establish only marginal adjustment.  Instead, the ALJ concluded that Plaintiff has more than a minimal ability to adapt to changes.  The ALJ also concluded that the evidence fails to show medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing for at least a two-year period.

This last factor is dispositive.  As the ALJ explained, Plaintiff had only sporadic treatment over the two-year period following the alleged onset date of July 1, 2018.  Additionally, Plaintiff stated to the psychological examiner in July 2020 that he had not taken any psychological medication in over a year.  While the record shows evidence that Plaintiff has been

15

admitted for psychological treatment, there is no evidence of psychiatric admissions since the alleged onset date.  Finally, as the ALJ observed, Plaintiff lives on his own and is able to manage self-care.

Though Plaintiff claims the record shows consistent treatment through "mid 2020," Plaintiff does not cite any evidence to support this contention.  Moreover, Plaintiff's reference to extensive treatment "since 2011" does not specifically address the treatment history since the July 1, 2018, alleged onset date and, as indicated above, the record reveals only sporadic treatment with no medication after that date.  Based on the record as a whole, the Court finds no error with the ALJ's conclusion that none of the listings at issue applies here because Plaintiff failed to present evidence establishing the Paragraph C criteria.

### D.    Residual Functional Capacity Assessment

According to Plaintiff, the ALJ's determination of residual functional capacity at Step 4 is not based on substantial evidence.  See ECF No. 14, pgs. 12-13.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[3]  An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

/ / /

---

[3]      Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

1       In determining Plaintiff's residual functional capacity at Step 4, the ALJ

2  considered Plaintiff's subjective statements and testimony.  <u>See</u> CAR 24-26, 28.  The ALJ

3  determined that Plaintiff's allegations of disabling mental and physical symptoms are not

4  supported by the objective evidence.  <u>See</u> <u>id.</u>  After summarizing Plaintiff's subjective statements

5  and testimony as well as the objective medical findings of record, he ALJ stated:

6  
> The claimant's statements and medical records indicate inconsistencies
> with respect to the severity of his limitations, which weakens the
> persuasiveness of his allegations. As discussed above, physical
> examination, imaging, and mental status examination do not support the
> degree of alleged limitation. Moreover, the claimant has limited treatment
> for both his physical and mental impairments following the alleged onset
> date. Furthermore, the claimant has described daily activities, which are
> not limited to the extent one would expect, given the complaints of
> disabling symptoms and limitations. The claimant lives on his own. (5F).
> He is fully able to care for his personal needs, and he can episodically
> complete activities of daily living. (6F). The claimant reports he collects
> cans, reads, plays disc golf (alone), and listens to meditation recordings.
> (5F). He does all of his own shopping, meal preparation, and chores. (5F).
> As a result of the above, the persuasiveness of the claimant's allegations
> regarding his symptoms and limitations during the relevant period is
> diminished because those allegations are greater than expected in light of
> the record and in light of the claimant's own allegations.

15       CAR 28.

16       At Step 4, the ALJ also considered the medical opinion evidence.  <u>See</u> <u>id.</u> at 26-27.

17  In doing so, the ALJ evaluated opinions from the following sources: (1) the state agency medical

18  consultants; (2) the physical consultative examiner; (3) the state agency psychological

19  consultants; and (4) the psychological consultative examiner.  <u>See</u> <u>id.</u>  The ALJ "did not provide

20  articulation about the evidence that is inherently neither valuable nor persuasive to the issue of

21  whether the claimant is disabled in accordance with 20 CFR 404.1520b and 416.920b."  <u>Id.</u> at 27.

22       As to the state agency medical consultants, the ALJ concluded that their findings

23  of an ability to perform medium work with certain postural, manipulative, and environmental

24  restrictions are not "fully persuasive."  <u>Id.</u> at 26.  Specifically, the ALJ found that the limitations

25  opined by the medical consultants are not supported by physical examinations which showed that

26  Plaintiff's dexterity was intact, gait was normal, and Plaintiff had full strength with intact

27  sensation.  <u>See</u> <u>id.</u>  The ALJ otherwise appears to have accepted the medical consultants'

28  conclusion that Plaintiff can perform medium work.  <u>See</u> <u>id.</u>

The ALJ next concluded that the physical consultative examiner's opinion that Plaintiff is limited to a reduced range of light work is not supported by the doctor's own observations on examination.  See id.  Citing Exhibit 6F, the ALJ noted: "At the consultative examination, physical examination was largely intact including normal gait, intact dexterity, negative straight leg raising, full strength throughout, and intact sensation."  Id. at 26-27.

Next, the ALJ concluded that the opinions of the state agency psychological consultants were not persuasive.  See id. at 27.  The psychological consultative examiners found on reconsideration that Plaintiff has moderate psychological limitations.  See id.  The ALJ stated:

> . . . The extent of the limitations are not supported by the examiner's summary and analysis of records reviewed and are not consistent with records received at the hearing level. Following the claimant's 2018 alleged onset date, there is evidence of a handful of therapy appointments in 2018, but no record of mental health treatment thereafter. (3F/1, 4; 11F/3). The claimant attended a psychological consultative examination in July 2020, where the claimant stated he had not been taking any medications in over a year. (6F). There have been several prior psychiatric inpatient admissions in the past, but none since the alleged disability onset date. (6F).

CAR 27.

Finally, the ALJ considered the opinion of the psychological consultative examiner, whose opinion the ALJ found to be persuasive.  See id.  Based on this opinion, the ALJ assessed the following mental limitations: Plaintiff is limited to simple, routine tasks not at a production pace; only occasionally interactions with supervisors and co-workers; no interactions with the public; and only occasional changes to a routine work setting.  See id. at 24.

Plaintiff does not specifically challenge the ALJ's findings with respect to Plaintiff's subjective statements and testimony or the medical opinion evidence.[4]  Instead, and very generally, Plaintiff argues:

> Here there is substantial evidence to support why the ALJ decision is erroneous at best. Despite her attempts to find evidence not "persuasive" her decision to subjectively discredit testimony and medical records (supra) including medical examiners opinions which all would

---

[4]    In the context of Plaintiff's first argument, discuss above, Plaintiff criticizes the ALJ for dismissing Plaintiff's testimony.  See ECF No. 14, pg. 7.  Plaintiff does not, however, offer any argument in support of a claim of error by the ALJ with respect to evaluation of Plaintiff's subjective statements and testimony.

1   lead to a favorable finding to Chavez, the reasons set forth to why she
    dismisses weight to the evidence before her does not appear to be valid.
2           Because there are no reasonable grounds to dismiss all the
    favorable evidence that supports Chavez disability, for instance when she
3   claims there are not records to support, when they are blatantly there,
    appears the ALJ decision to find Chavez had a medium RFC was based
4   on her own subjective decision to not evaluate the entire records, and
    therefore not supported by substantial evidence in the record. *Burch v.*
5   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)
            Therefore, because the ALJ subjectively without evidence
6   deviated from the substantial records that Chavez had a *light* RFC, her
    decision is with error. And this case should be reversed. *Andrews v.*
7   *Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995).

8       ECF No. 14, pgs. 12-13 (errors in original).

9       This generalized argument is not persuasive.  Plaintiff does not specifically

10  identify the "favorable evidence that supports Chavez disability."  To the extent Plaintiff is

11  referring to the various portions of the record at Exhibits 2F, 4F, 6F, 7F, 8F, 9F, and 11F,

12  discussed above, the Court agrees with the ALJ that these documents are neither probative nor

13  significant.  The Court finds no error at Step 4.

14      **E.    Vocational Findings**

15      Plaintiff contends that the hypothetical questions posed to the vocational expert did

16  not accurately reflect Plaintiff's residual functional capacity and, thus, the ALJ's determination at

17  Step 5 is flawed.  See ECF No. 14, pgs. 11-12.

18      The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about

19  disability for various combinations of age, education, previous work experience, and residual

20  functional capacity.  The Grids allow the Commissioner to streamline the administrative process

21  and encourage uniform treatment of claims based on the number of jobs in the national economy

22  for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

23  460-62 (1983) (discussing creation and purpose of the Grids).

24      The Commissioner may apply the Grids in lieu of taking the testimony of a

25  vocational expert only when the Grids accurately and completely describe the claimant's abilities

26  and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

27  Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

28  Grids if a claimant suffers from non-exertional limitations because the Grids are based on

19

1    exertional strength factors only.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If

2    a claimant has an impairment that limits his or her ability to work without directly affecting his

3    or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by

4    the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

5    Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

6    even when a claimant has combined exertional and non-exertional limitations, if non-exertional

7    limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

8    1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

9              In cases where the Grids are not fully applicable, the ALJ may meet his burden

10   under step five of the sequential analysis by propounding to a vocational expert hypothetical

11   questions based on medical assumptions, supported by substantial evidence, that reflect all the

12   plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

13   where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

14   non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

15   Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

16             Hypothetical questions posed to a vocational expert must set out all the

17   substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

18   Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

19   limitations, the expert's testimony as to jobs in the national economy the claimant can perform

20   has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

21   the ALJ may pose to the expert a range of hypothetical questions based on alternate

22   interpretations of the evidence, the hypothetical that ultimately serves as the basis for the

23   ALJ's determination must be supported by substantial evidence in the record as a whole.  See

24   Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

25             At Step 5, the ALJ obtained testimony from a vocational expert.  See CAR 30.

26   Based on a hypothetical question which assumed the residual functional capacity assessed at Step

27   4 (i.e., the ability to perform medium work with certain limitations), the vocational expert

28   testified that Plaintiff could perform the jobs of laundry worker and landscape specialist, both of

which have an exertional level of "medium" and are unskilled.  See id.  The ALJ determined that

the vocational expert's testimony was consistent with the definitions contained within the

Dictionary of Occupational Titles.  See id.

According to Plaintiff:

> Here the ALJ decision was tainted and erroneous based on the face
> of the evidence. This error occurred when the ALJ communicated the
> wrong physical limitations to the vocational expert at the hearing. (AR57-
> 8) despite the limitations being more restrictive in her written decision
> (AR24-26) Instead, the ALJ told the VE "assume an individual the same
> age, education, and work experience **can** frequently reach, handle and
> finger bilaterally" (AR 57-8) then again affirms that there were no
> limitations. on the inconsistent statements by the ALJ at the hearing. The
> VE appeared to be confused and made several comments about his notes
> not being correct, (AR 57-8) which is supported in the transcripts when
> the VE had to inquire several times to what the limitations/ restrictions
> were in the hypothetical,(AR 57-8) When seeking clarification, the ALJ
> affirmed there were no manipulative limitations, by stating "**can**
> frequently reach, handle and finger bilaterally". (AR 57-8), furthermore
> the VE admitted there was an issue and commented on the fact he "messed
> up my notes" (AR 58) and then again said "I thought you said something
> else" (AR 58) and again stated "I thought—that's my bad note taking"
> (AR 58) but for this erroneous communication made by the ALJ the
> decision would have been different.
> Because the ALJ determined Chavez had certain manipulative
> restrictions *supra,* and those were not communicated to the VE properly at
> the hearing, the findings by the VE are then flawed, and based on an error
> on the face of the evidence and remand is propr.
> Additional for discussion.

ECF No. 14, pgs. 11-12 (errors in original).

Plaintiff's argument appears to center around the exchange between the ALJ and

the vocational expert at the administrative hearing.  The transcript of the hearing reflects the

following questions and answers:

> Q:      Okay. All right.  So I would like to ask you hypothetical
> questions.  For the first hypothetical, assume an indicial of the same age,
> education, and work experience as the claimant who can work at the
> medium exertional level and who can frequently reach, handle, and finger
> bilaterally; who must avoid unprotected heights, workplace hazards and
> moving machinery; who is limited to simple routine tasks, not at a
> production pace; can have occasional interactions with supervisors and
> coworkers and none with the general public; and can tolerate occasional
> changes to a routine work setting.  Can the past work be performed?
>
> A:      No, ma'am.  That would eliminate past work.

/ / /

1            Q:     All right.  Is there work in the economy that can be performed?

2

3            A:     The occasional interaction with supervisors and coworkers, would that be after the orientation or training period?

4            Q:     I guess it would.

5            A:     All right.  Just one moment.  And you did say medium exertional limits, correct?

6            Q:     That's right, yes.

7

8            A:     All right.  Thank you.  And I really messed up my notes.  What was the first point, the first issue?  No?

9            Q:     Is limited to simple, routine tasks, not at a production pace.  Occasional interactions with supervisors and coworkers.  None with the public and occasional changes to a routine work setting.

10

11            A:     Okay.  I thought – that's my bad note taking.  I thought you said something before all of that.  Okay.  All right.  One moment, please.  The first one would be a laundry worker, DOT 361.684-014, SVP: 2, medium level, approximately 40,000 jobs.  A second would be an industrial cleaner, DOT 381.687-018, SVP: 2, medium, approximately 36,000 jobs.  And I'm sorry, Your Honor.  Let's strike that one.  I'm sorry.  That would be working around machinery.  The second would be a hand packager.  No, ma'am.  Let's strike that.  That would be a production job.  All right.  Landscape specialist, DOT number 406.687-010, SVP: 2, medium level, approximately 66,000 jobs.  I am really not seeing a third with the combination of these limitations.

12

13

14

15

16

17            CAR 57-59 (hearing transcript).

18            Plaintiff contends that the hypothetical question did not accurately describe

19  Plaintiff because it did not include manipulative limitations.  The Court finds no error because, as

20  discussed above, Plaintiff has not established any error at Step 4 in the ALJ's determination of

21  residual functional capacity with respect to manipulative limitations.  Plaintiff's apparent

22  assertion that somehow the vocational expert's answers were unclear because the expert had some

23  confusion regarding his notes is not persuasive.  As the hearing transcript reflects, though the

24  vocational expert seemed to have not organized his notes carefully, the expert nonetheless

25  responded to a hypothetical accurately describing Plaintiff's residual functional capacity.  In fact,

26  the expert's comments regarding notes served to clarify any uncertainties and focus in on the

27  precise hypothetical posed by the ALJ.

28  / / /

1

**F.**     **Missing Evidence**

2          Citing the certified administrative record at pages 543-44, Plaintiff states that

3 "there appears to be an official QME report (AR 543-44) from Dr. Michael Sommers that is

4 missing from the record, in addition to the actual treatment records, (not just encounters) of

5 treatment from the 2019-May 2020 visits Chavez had with mental health."  ECF No. 14, pg. 13

6 (errors in original).  Plaintiff adds:

7                  . . . It should be based on good cause of not incorporating the
             evidence in the record, as this hearing was held in the heat of massive
8            government shut down due to COVID-19, there is also a VA decision for
             compensation for disability decision that should be reviewed as that
9            decision occurred after the decision in this case and covers the same
             alleged onset dates. It appears that Chavez was determined to be 100
10           percent disabled due to his issues relating to his anxiety and depression,
             leaving him to be unemployable. This decision was made that Chavez as
11           permanent and totally disabled and an effective date of July 1, 2018.
             (covers the same timeframe as this case)
12
             Id. at 13-14 (errors in original).
13

14         Notably, though Plaintiff asserts that there are missing portions of the record

15 consisting of a report from Dr. Sommers and, apparently, a VA decision, Plaintiff does not

16 provide these allegedly missing documents to the Court.  The record at pages 543-44 consists of a

17 portion of Exhibit 7F.  As discussed above, these records pre-date the alleged onset of disability

18 on July 1, 2018.  The report from Dr. Sommers, which is referenced at page 543, is from February

19 2011 and, even if included in the record, would not be probative of the issue of disability starting

20 in July 2018.  Finally, as Defendant notes, Plaintiff was represented by counsel at the

21 administrative hearing and counsel acknowledged that the record was complete.  See CAR 39-40.

22 Thus, any issues with respect to allegedly missing evidence is forfeited.  See Meanel v. Apfel,

23 172 F.3d 1111, 1115 (9th Cir. 1999).

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1

**IV.  CONCLUSION**

2        Based on the foregoing, the Court concludes that the Commissioner's final

3   decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4   ORDERED that:

5            1.      Plaintiff's motion for summary judgment, ECF No. 14, is denied;

6            2.      Defendant's motion for summary judgment, ECF No. 18, is granted;

7            3.      The Commissioner's final decision is affirmed; and

8            4.      The Clerk of the Court is directed to enter judgment and close this file.

9

10   Dated:  August 11, 2023

11                                              _____
                                               DENNIS M. COTA
12                                             UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28